```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA        :

        - v. -                  :    S1 12 Cr. 113 (LAP)

LAURENTIU IULIAN BULAT,         :

              Defendant.        :

- - - - - - - - - - - - - - - - x
```

## GOVERNMENT'S SENTENCING MEMORANDUM

The Government respectfully submits this letter in advance of defendant Laurentiu Iulian Bulat's sentencing, which is scheduled for April 30, 2013. The Government submits that a sentence within the advisory United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") range of 51 to 63 months' imprisonment, as set forth in the defendant's plea agreement and in the Pre-Sentence Report ("PSR"), is appropriate and reasonable.

## Background

The defendant pleaded guilty to one count each of conspiracy to commit bank fraud; bank fraud; and conspiracy to commit access device fraud, in connection with his involvement in an ATM skimming scheme that operated in the New York area between May 2010 and January 2012. As set forth in the Complaint, Superseding Indictment ("Indictment"), and PSR, Mr.

Bulat installed fraudulent card readers and hidden pinhole cameras at automated teller machines (ATMs) at HSBC banks in Manhattan, Queens, and Westchester County, among other locations.  (PSR ¶¶ 12-22, 24.)  Mr. Bulat's co-defendants in this case, Cosmin Merca and his brother Richard Merca, (and others who remain at large) removed the devices, typically called "skimming devices," a short while after Mr. Bulat had placed them.  (*Id.* ¶ 23.)  Through these devices, the members of the fraud ring were able to capture bank ATM customers' account numbers and personal identification numbers (PINs), and thereby steal money from their accounts.  (*Id.* ¶¶ 22-23.)  Based on HSBC ATM video surveillance, Mr. Bulat was involved in placing <u>all</u> of the devices in the incidents comprising the charged conduct – that is, on approximately 40 separate occasions between May 2010 and January 2012, Mr. Bulat placed the skimming devices on HSBC ATMs.  (*Id.* ¶ 24.)  Mr. Bulat's skimming activities resulted in a total loss to HSBC accounts of approximately $1,413,217.55.  (*Id.* ¶ 25.)  In contrast, Mr. Bulat's co-defendant Cosmin Merca's conduct involved 20 different incidents during which he accompanied Mr. Bulat while Mr. Bulat placed the devices, tested devices Mr. Bulat had placed, or, most commonly, removed devices Mr. Bulat had placed, for a total loss of approximately

$360,478.50 to HSBC. Richard Merca – the least involved of the three – was involved in eight incidents, removing the devices that Mr. Bulat had placed, and in those incidents, HSBC incurred a loss of approximately $374,329.

On January 23, 2013, Mr. Bulat pled guilty pursuant to a plea agreement. The plea agreement estimated that Mr. Bulat's exposure under the Sentencing Guidelines was 51 to 63 months. The Guidelines analysis was based on, among other things, the loss amount between $1,000,000 and $2,500,000 directly attributable to Mr. Bulat's conduct, based on all of the occasions when Mr. Bulat was observed in HSBC video surveillance placing skimming devices; the use of sophisticated means by the conspiracy; because the offense involved the possession or use of device-making equipment, and involved the production or trafficking of unauthorized access devices; and the defendant's acceptance of responsibility.

### A Guidelines Sentence Would Be Sufficient, But Not Greater Than Necessary, To Address The Statutory Goals Of Sentencing

The Government believes that a sentence within the Guidelines range is appropriate based on the factors set forth in 18 U.S.C. § 3553(a).

A. <u>Applicable Law</u>

The advisory Sentencing Guidelines promote the "basic aim" of Congress in enacting the Sentencing Reform Act, namely, "ensuring similar sentences for those who have committed similar crimes in similar ways." *United States* v. *Booker*, 543 U.S. 220, 252 (2005). Thus, the Guidelines are more than "a body of casual advice, to be consulted or overlooked at the whim of a sentencing judge." *United States* v. *Crosby*, 397 F.3d 103, 113 (2d Cir. 2005). The applicable Sentencing Guidelines range "will be a benchmark or a point of reference or departure" when considering a particular sentence to impose. *United States* v. *Rubenstein*, 403 F.3d 93, 98-99 (2d Cir. 2005).

In furtherance of that goal, a sentencing court is required to "consider the Guidelines 'sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant,' the pertinent Sentencing Commission policy statements, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to victims." *Booker*, 543 U.S. at 224 (citations omitted).

Along with the Guidelines, the other factors set forth in Section 3553(a) must be considered. Section 3553(a) directs

4

the Court to impose a sentence "sufficient, but not greater than necessary" to comply with the purposes set forth in paragraph two. That sub-paragraph sets forth the purposes as:

    (A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B)    to afford adequate deterrence to criminal conduct;

    (C)    to protect the public from further crimes of the defendant; and

    (D)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2). Section 3553(a) further directs the Court – in determining the particular sentence to impose – to consider: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the statutory purposes noted above; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range as set forth in the Sentencing Guidelines; (5) the Sentencing Guidelines policy statements; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to any victims of the offense. See id.

B. Discussion

        Under the circumstances of this complex bank fraud scheme, and based on a review of the factors set forth in 18

U.S.C. § 3553, the Government respectfully submits that a sentence within the Guidelines range of 51 to 63 months' imprisonment is appropriate for Mr. Bulat. The conspiracy resulted in a loss of over one million dollars to the bank; utilized sophisticated devices; and stole from numerous bank customers throughout the New York area and affected many different bank branches. As a result of the scheme, HSBC, the victim bank, not only lost over one million dollars, but had to devote substantial resources to detecting and stopping the fraud. At the same time, hundreds of unwitting account-holders had their identities stolen and their bank accounts compromised – an invasion that warrants serious punishment. A Guidelines sentence would reflect the seriousness of Mr. Bulat's offense, promote respect for the law, and provide just punishment. See 18 U.S.C. § 3553(a)(2)(A).

Further, a significant sentence is necessary to achieve appropriate deterrence. See 18 U.S.C. § 3553(a)(2)(B), (C). Such a sentence would send a clear message, both to Mr. Bulat specifically and to would-be skimmers generally, that the cost of getting caught far outweighs any potential payoff that participating in skimming activities may provide.

A significant sentence is particularly necessary to

6

achieve deterrence as well as the other purposes set forth in 18 U.S.C. § 3553(a) in light of Mr. Bulat's individual circumstances and conduct.  Mr. Bulat played a key role in this skimming scheme.  This is true both taking his conduct on its own, as well as considering it relative to his co-defendants.  As noted above, this defendant himself placed the skimming devices on the ATMs in each of the approximately 40 instances encompassed by the Indictment, which is one of the most significant roles one can play in a scheme to steal money through the placement of ATM skimming devices.  His involvement was more substantial in comparison to his co-defendants, based on the number of times he was involved, the significance of the role he played, and in the amount of loss that resulted.[1]  Moreover, his criminal activity was repeated and prolific – involving 40 separate instances over approximately a year and a

---

[1] Richard Merca was sentenced by the Honorable Barbara S. Jones on December 18, 2012 to time served (specifically, 13 months, which included both five months spent in federal custody in the instant case, and an additional eight months that he spent in state custody based on an arrest in Westchester Country for retrieving skimming devices in an incident that was part of the conduct included in the instant charges.  The stipulated Guidelines range in Richard Merca's plea agreement was 27 to 33 months.  Probation recommended a sentence of 19 months reflecting a downward departure from the applicable Guidelines range, pursuant to U.S.S.G. § 5K2.23, based on the eight months that he had spent incarcerated on the related Westchester County offense.)  Cosmin Merca was sentenced by Judge Jones on December 19, 2012 to 27 months.  (The stipulated Guidelines range for Cosmin Merca was 33 to 41 months.  Probation recommended a sentence of 33 months.)

half in various banks all over the New York metropolitan area. The recurrent and brazen nature of his conduct underlines the need for a significant sentence for Mr. Bulat that will adequately protect the public from further crimes by him, and also send a clear message both to him and to the public that such criminal conduct will be adequately punished.  Notably, the defendant's involvement in the scheme ceased only with his arrest – while attempting to place skimming devices on an ATM machine in Manhattan early in the morning of January 5, 2012. (*See* Criminal Complaint, 12 Mag. 0030, attached as Exhibit A.)

Nor is there anything in Mr. Bulat's personal circumstances or history to suggest leniency is warranted.  Mr. Bulat claims that he "came to the United States in order to work because his family was having a financial hardship." (PSR ¶ 50.)  However, he arrived on a tourist visa (which he overstayed), rather than a visa that would permit him to work legally, and he has had no apparent employment since arriving here in November 2009, or any reported assets, income or liabilities.  (*Id.* ¶¶ 56-59.)  Indeed, since at least six months after he arrived, from May 2010 until his arrest in January 2012, Mr. Bulat's primary activity appears to have been his involvement in this scheme.

8

The Guidelines range appropriately accounts for the scope and repetitive nature of Mr. Bulat's conduct, his significant role in the offense, the impact in terms of financial loss to the banks that resulted from his conduct, and the sophisticated nature of the scheme.

## CONCLUSION

For these reasons, the Government respectfully requests that the Court sentence Mr. Bulat within the advisory Guidelines range of 51-63 months' imprisonment which is an appropriate and reasonable sentence based on the application of § 3553 factors.

Dated:   April 24, 2013
         New York, New York

                                        Respectfully submitted,

                                        PREET BHARARA
                                        United States Attorney

                    By: *[signature]*
                         Rosemary Nidiry
                         Assistant United States Attorney
                         Tel: (212) 637-1063
                         Fax: (212) 637-2620

cc:  Barry Weinstein, Esq.
     By ecf and E-mail